United States District Court
Southern District of Texas
Houston Division

United States Courts
Southern District of Texas
FILED

SEP 25 2020

David J. Bradley, Clerk of Court

Michael Garrett
v.
Lorie Davis, Respondant
TDCJ-CID Director

Civil Action
Complaint

## Jurisdiction and Venue

This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation under color of state law of rights secured by the constitution of the United States. The court has jurisdiction under 28 USC section 1331 and 1343(a)(3). Plaintiff Garrett seeks injuctive relief authorized by 28 USC section 2283 and 2284, declaratory relief pursuant to 28 USC section 2201 and 2202 and rule 65 of the Federal Rules of Civil Procedure.

The Southern District of Texas, Houston Division is an appropriate venue under USC 1391(b)(2) because it is where the event giving rise to this claim occured.

## Plaintiff

Plaintiff Michael Garrett is and was at all times mentioned herein a prisoner of the State of Texas in custody of the Texas Department of Criminal Justice - Corrections Institution Division. He is currently confined in a Texas State Prison, in Huntsville, Texas.

## Defendants

Respondant Lorie Davis is the Director of TDCJ-CID. (She is legally responsible for the operation of Texas State Prisons and the welfare of all inmates in the Texas prisons.) (Official capacity and individual capacity.)

Respondant C. Tatsch Risk Manager Estelle TDCJ - CID. (Legally responsible for all inmates safety in the Estelle Unit) (Official capacity and individual capacity.)

Jefferey Richardson Senior Warden Estelle Unit TDCJ-CID. (Official and individual capacity.)

Tracy Hutto Asst. Warden Estelle Unit TDCJ - CID. (Official and individual capacity.)

Capt. Goodall Estelle Unit TDCJ - CID. (Official and individual capacity.)

1

UTMB Correctional Management Care. (Official capacity.)

All defendants are legally liable and responsible for health and welfare of all prisoners (myself included), as well as the safety of the environment and conditions of the prison and all operational areas respectively. Tx. Govt. Code 493.006 and 501.

## Exhaustion of Legal Remedies

Grievances numbers 2020101470, 2020145870 and 2020158613 (redundant).

On the 07 April 2020, Plaintiff began his campaign to complain about the unsafe and torturous conditions of prison (TDCJ) via grievances letters and verbal communications with TDCJ and her designees. Plaintiff's complaint revolves around the handling and protection of prisoners, conditions of confinement, safety and welfare, and lack of medical personnel to care for prisoners, all during the pandemic of the Corona Virus.

The defendants have knowingly acknowledged via grievance responses or "issue not grievable" response to the immediate and imminent conditions. (Ref. grievance numbers 2020145870, 2020158613 [redundant], and 2020101470 and written response from UTMB/CMC representative as "issue not grievable" pertaining to ratio to provider per inmate. The under manned assistance creating delays for medical care (physical as well as mental health). Plaintiff has also acquired the grievance 2020109346 where TDCJ and her designees have expressed how their own employees are the host and source responsible for the spreading of the Corona Virus within TDCJ, primarily the Estelle Facility.

Plaintiff's complaint to all defendants of TDCJ instituted issues about: sanitiation/hygiene - no hot water or adequate running water to accomodate combating the spreading of the Corona Virus. Cells and personel beings are without accomodations respectively.

Housing: No implimented phase housing; meaning, positive/asymptomatic, negative, and those refusing testing. TDCJ is petri dish style housing its inmates; mixing the prisoners by shuffling, mingling and congregating them all together. Single cell housing is not even possible due to limited space, via Sr. Warden Richardson.

Operational Areas: Not enforcing sanitation to the shower area(s). Exposed Corona Virus prisoners (and carriers thereof) shower with negative tested prisoners and not tested prisoners. Alternatively, negative tested are immediately corraled into the showers upon the positive asymptomatics departure. No

sanitizing is taking place. The virus looms in the humidity and mist within the shower area (petri dish effect) to contaminate other prisoners to the deadly Corona Virus.

Testing/Retesting: No testing or retesting is occuring after quaranting periods. Those exposed are not retested, even though they can reobtain the illness and/or ailments of the Covid Virus, thus spreading to Non-Covid positive individuals.

Officers with the taskforce have stated they ensure an adequate counted test to plaintiffs inquiry. However, via the 03 August 2020 testing, the taskforce falsely documented prisoners, misleading the count of those exposed to those whom are not. Murphy Lee Maloney (TDCJ # 1830727), was diagnosed as positive, however, when Mr. Maloney (wherefore) was at UTMB-Galveston 04 August 2020, he was test for Covid and with a more extensive accurate test, and came to be negative. His affidavit secured (upon necessary) for courts future orders. TDCJ and her designees are inaccurately reporting the test results. TDCJ and her designees have made statements to plaintiff that Covid is "population control in prison. If some of you die, it will make more room for those coming in, so basically, its job security."

Unsafe practices of mask wear: Officers do not wear their masks accordingly, exposing inmates to the greater chance of contracting Covid. The administrators of TDCJ-Estelle have acknowledged that their own employees are the cause and effect, to spreading Covid. Officers are carriers/asymptomatic transmitting and passing it to prisoners. Officers are not designated to work the same areas, so upon exposure, they are assigned to other housing areas to expose inmates and their own co-workers. Capt. Goodall, via the administrators investigation and acknowledgement, is and was one of the primary officers to expose the facility. The other officer, Mr. David Welcher (exact name uncertain), died from Covid. He was the first documented officer death at the Estelle Unit. (Ref. grievance number 2020109346)

Social Distancing: Single cell housing is NOT POSSIBLE via TDCJ's designee. Recently on 12 Aug 2020, director of communication for TDCJ Jeremy Gleason, stressed while being interviewed on NPR's (National Public Radio) Houston Matters Special Edition show at 3 pm central time. Mr. Gleason iterated, "there are 24,000 empty beds within TDCJ. . .", yet "single cell housing is not possible" to maintain social distancing to ensure safety and protection from spreading the virus, which has created a pandemic upon the prison.

Plaintiff has (and had) tried numerously to conference settle with the

defendants to prevent litigation into the courts. Each defendant, within TDCJ's jurisdiction, are deliberately indifferent to prisoners protected rights to be free of imminent risk of harm and danger. The immediate danger of Covid was forewarned by the risk manager of Estelle - TDCJ. Her addressments to the administrators of Estelle - TDCJ about the safety and care of the facility went unentertained to protect the integrity of operations within the facility. Safety precautions and such forth. However, the risk manager failed to report to her ARMS supervisor in Huntsville. Such neglect to report allowed the Corona Virus to metastasize, deeply within the Estelle Medical Facility. The risk managers notification upon the administrators gives great credence that harm could come from the Corona Virus Epidemic, and has.

### UTMB/Correctional Management Care

Plaintiff made the attempt to resolve with UTMB - CMC that the ratio-to-provider-to-inmate creates delays for medical care due to the unmanned, undermanned assistance in attending health care and mental health.

Because UTMB/CMC's designee deemed this matter not a grievable subject issue, plaintiff is without recourse to solution except thru the courts appearance.

Plaintiffs question to UTMB; "would they add more providers to assist in attending health care and mental health?" The question derives from the long extended wait periods to be seen by a doctor (i.e. to be seen for an ailment, illness or sickness). As well plaintiff was informed this is a common practice by UTMB/CMC to see just how far, or prolonged, an inmates situation can go untreated; via Dr. Karen McPhearson, author of "No Apparent Distress." She was an intern and resident with UTMB and personally documented this deliberate indifference and cruel and unusual punishment upon a prisoner within TDCJ.

Since the Covid pandemic, even though all co-payments for medical treatment has been suspended until further notice, UTMB is still undermanned. Thus, they aren't able to; do twice daily temperature checks upon the prisoners, not permit medical showers. (not disabilities showers, but medical showers for which are held inside medical. Plaintiff has a medical shower pass for treatment, upon his unspecific cause of skin disorder. Yet, is not permitted to use, to treat his ailment), and not able to treat the skin disorder via the prescribed phototherapy/radiation treatment sessions.

The provider per prisoner ratio creates a deliberate indifference to treatment and care to plaintiffs medical need and care.

It's through the following studies and articles, that support plaintiffs

claim that Covid is a deadly virus, and is an imminent risk of harm and danger to ones wellbeing, his particularly.

CDC; has tacitly acknowledged in their language that prisons can't safely house inmates, massive number of low risk inmates need to be released to permit social distancing amongst high risk inmates. With more widespread availability of diagnostic tests, it is now practical to test asymptomatic people too. The new CDC guidance discusses testing people exposed to an infected person more often during quarantine. Sensor held in front of the forehead only measures the body temperature to see if the person has a fever. That is not a test for Corona Virus. "Airborne" refers to single virus particles or very very small droplets that do not settle out of the air. A poorly ventilated room (as is the showers and cells) would emit a cloud of infectious particles (in that, an infected person speaking in a normal tone of voice). People who are closer together and spend more time face to face are substantially increased to risk of infection.

The American Journal of Public Health July 2020 issue, summed up the reasons that prisons are high-risk institutions, i.e. overcrowding and unsanitary living conditions) and a potential source of re-infection.

Their Journal of the American Medical Association July 2020 issue, stated by Sharon Dolovich (Proffessor at UCLA School of Law and Director of UCLA Law Covid behind Bars Data Project) and Brendan Saloner (Associate Professor at John Hopkins Bloomburg School of Public Health), "In the United States, the incarcerated typically live in overcrowded facilities with poor ventilation and insufficient access to masks and soap. They disproportionally are more likely to have medical conditions that put them at high risk if they get the virus." And everyday, staff and trustees move through the prison, spreading the risk of infection to every housing unit.

Again, TDCJ's Director of Communication interviewed on NPR Network, identifies to the imprudence of keeping clean, twice a day testing, masks worn, and social distancing.

Plaintiffs claim before the Honorable Court seeks the courts intervention to ensure his welfare and wellbeing, from the defendants illsuited behavior and conduct, are protected.

## Question of Law

Are conditions of designed, jeopardizing and violating plaintiffs Eigth Amendment right? Does plaintiffs constitutional rights go into unsanctioned abeyance, because of a pandemic?

5

## Conclusion

Plaintiff asks the Honorable Court to construe pro se complaint liberally, Mayfield v. TDCJ, 529 F.3d 599, 604-05 (5th Cir. 2008), and in lieu to 42 U.S.C. § 1997e(e) and Geiser v. Jowers, 404 F.3d 371, 375 (5th Cir. 2005). Plaintiff only seeks injuctive relief and declaratory relief, not damages.

A. Sanitation/Hygiene Hot running and adequate running water to accomodate to combat Corona Virus in cells and for personal being respectively.

B. 3 Phase housing. Positive/Asymptomatic, negative and those whom refuse housing. No petri dish housing.

C. Operational Areas. Enforcing sanitizing showers. No coraling prisoners in showers - mixing positive, asymptomatics with negatives. Nor petri dish housing.

D. Testing/Retesting. Testing/Retesting immediately after quarantine period to ensure wellbeing and welfare. When testing is conducted, positives to be tested regardless to ensure no reobtaining of virus has occurred.

E. Task Officers Issuing Tests. Outside oversight to ensure testing is properly done and recorded accurately. Retest, system, in its entirety, (system meaning all TDCJ facilities) with new oversight from outside, federal monitor and receiver.

F. Mask Enforcement to Officers. Outside oversight to monitor and enforce the wearing of masks by employees of TDCJ.

G. Social Distancing. Single cell housing among general population housing, to all prisoners until pandemic is resolved.

In Lieu to TDCJ and designees, relieved of positions with no promotion in title positions.

UTMB/CMC

Regulate an adequate ratio to provider to prisoner. More providers or downsize population of prison to adequately accomodate. Federal monitor and receiver to help design a pilot format. Brown v. Platta. (Supreme Court, 2015)

And any other relief deemed necessary by the Honorable Court.

Date: 22 September 2020

Michael Garrett # 697364
264 FM 3478
Huntsville, Tx. 77320

Oath

I verify that the above is true, complete and correct under penalty. 28 U.S.C. § 1746.

Date: 22 September 2020

Michael Garrett # 697364
264 FM 3478
Huntsville, Tx. 77320

Case 4:20-cv-03328 Document 1 Filed on 09/25/20 in TXSD Page 8 of 9

## Certificate of Service

I do hereby and certify that the above has been mailed to the following via First Class Pre-Paid U.S. Postage:

Lorie Davis, TDCJ Director
    861 B I-45 North
    Huntsville, Texas 77320

C. Tatsch.  Risk Mgr  Estelle Unit
Sr. Warden Richardson  Estelle Unit
Asst. Warden Hutto  Estelle Unit
Captain Goodall  Estelle Unit
    264 FM 3478 Estelle Unit
    Huntsville, Texas 77320

Date: 22 September 2020

Michael Garrett
264 FM 3478 (E2)
Huntsville, Tx 77320



NAME MICHAEL CAMPBELL
TDCJ# 697364
ESTELLE UNIT
264 FM 3478
HUNTSVILLE, TX 77320

AFSM 6 N HOU 773
WED 23 SEP 2020 PM

USDC S.D. Houston-1
P O Box 61010
Houston Texas 77[?]

United States Courts
Southern District of Texas
FILED
SEP 25 2020
David J. Bradley, Clerk of Court